```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - -x

In re:                            :

RICHARD FRANKLINO                 :    BK No. 04-12764
         Debtor                        Chapter 7

- - - - - - - - - - - - - - - - -x
```

### DECISION AND ORDER DENYING HOMESTEAD EXEMPTION

APPEARANCES:

    Jeffrey C. Blake, Esq.
    Attorney for Debtor
    1136 Main Street
    P.O. Box 782
    Wyoming, Rhode Island 02898

    Andrew S. Richardson, Esq.
    Chapter 7 Trustee
    BOYAJIAN, HARRINGTON & RICHARDSON
    182 Waterman Street
    Providence, Rhode Island 02906

BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge

BK No. 04-12764

Heard on the Debtor's claim of exemption to real estate located at 26 Visconti Street, Norwalk, Connecticut (the "property"). The resolution of this dispute requires a factual determination as to the Debtor's intent (or lack thereof) to occupy the house in which he owns a partial remainder interest. The property, which is encumbered by a life estate, is presently occupied by the Debtor's Aunt Bertha, the life tenant. The Debtor has elected the protections of the Rhode Island Homestead Act which provides in relevant part:

> (a) ... an estate of homestead to the extent of two hundred thousand dollars ($200,000) in the land and buildings may be acquired pursuant to this section by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise, and who occupy *or intend to occupy* the home as a principal residence.

R.I. Gen. Laws § 9-26-4.1(a)(2005)(emphasis added).[1]

The Trustee contends that the Debtor fails to qualify for the Rhode Island homestead exemption on the ground that he neither occupies, nor has he established the intent as of the petition date, to occupy the property when it becomes available, as his principal residence. Based on the record, the facts as determined

---

[1] In 2004, the Rhode Island Legislature increased the Rhode Island homestead exemption to $200,000. Because this case was filed before the amendment, the prior exemption of $150,000 applies.

BK No. 04-12764

after hearing, and the applicable statutes and authorities, I find and conclude that the Debtor has failed to establish the requisite intent to occupy the property.  Therefore, the Trustee's objection to the Debtor's claimed exemption is SUSTAINED.

### **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Except as to the ultimate issue here, i.e., the Debtor's intent to occupy, the material facts and the applicable law are not disputed.  Further, the parties stipulate that:  (1) although the property is located in Connecticut, the Rhode Island homestead statute applies; (2) the Debtor does not currently occupy the property; (3) the Debtor has the burden of establishing, under Rhode Island law, that as of the petition date, August 31, 2004, he intended to occupy the property as his principal residence; and (4) as of the petition date the market value of the property was approximately $250,000.

The only testimony offered at the evidentiary hearing was that of the Debtor who said that he is a one-half owner of the property with his brother, and that their respective fifty percent interests are subject to a life estate held by Aunt Bertha.  The Debtor also testified that the house was built by his grandfather, and that his father and mother, siblings, aunts, and uncles all lived in what truly can be described as the family homestead.  The Debtor also

2

BK No. 04-12764

tells us that Aunt Bertha is in her early eighties, that he plans to move into the property when she dies, and that his (co-owner) brother Scott, who lives in South Carolina, told the Debtor he would not force a sale when they acquire full title to the property.[2]

Since 1992, the Debtor has lived in and around Westerly, Rhode Island, which is only 20 minutes from work, using the free Foxwoods shuttlebus. He has not lived in Connecticut since 1988, and from the subject property to Foxwoods his daily commute would increase to one hour and twenty minutes each way. Mr. Franklino has worked as an assistant floor supervisor at Foxwoods Casino for thirteen years, plans to continue working there, and has reached the upper limit of his pay scale ($3,698 per month gross), but as a supervisor will continue to receive "modest raises." He does not know what it will cost to maintain the property, but thinks that the real estate taxes are about $3,700 annually. The record in this case, and the Debtor, both are silent as to mortgages or other encumbrances, the general condition of the property, or the cost of such items as deferred maintenance and necessary capital expenditures. Neither is there evidence as to whether the Debtor

---

[2] The (unobjected to) and uncorroborated statement attributed to Scott is clearly hearsay, and is so self serving that it is given no weight or deference.

3

BK No. 04-12764

will have to pay rent to his brother for his share of the property.[3]

## **DISCUSSION**

The Debtor cites to *In re DeMasi*, 227 B.R. 586 (D.R.I. 1998), where the District Court held that the debtor was entitled to a homestead exemption in property which he did not occupy. *Id*. at 588. While DeMasi and his brother did have remainder interests in property as tenants in common, subject to their Aunt Mary's life estate, the operative facts and issues in *DeMasi* were a far cry from those under consideration here. *Id*. at 587. To begin with: (1) DeMasi claimed his share of the property as exempt under the Federal law, 11 U.S.C. § 522(d)(1), rather than using state exemptions, *id.*; (2) on the issue of intent, DeMasi had actually tried to move into the property early, and the only reason he didn't was because Aunt Mary wouldn't let him in. *Id.*; (3) it was stipulated that upon Aunt Mary's death, his co-owner (brother) agreed that DeMasi could occupy, and that he would not force the partition and sale of the property. *Id*. at 588. We do not have such evidence here. See footnote 2, *supra*; (4) the District Court found that the record supported DeMasi's stated (and clearly

---

[3] Thus, the Debtor has provided no way for this Court to find that he is financially able to maintain the property, were he to occupy it. This is a necessary component of the Debtor's burden to show that he is financially able to carry out his stated intent to occupy the property as his principal residence.

4

BK No. 04-12764

demonstrated) intention to occupy the property "as soon as the law allows,"; and (5) that the debtor's remainder interest had value which could be, and which in fact was exempt under Section 522(d)(1). *Id.*

There are other factors which distinguish this case from *DeMasi*. First, we are dealing here with the Rhode Island exemption statute, R.I. Gen. Laws § 9-26-4.1, which differs a lot from the federal statute used in *DeMasi* – specifically, 11 U.S.C. § 522(d)(1)(West 1998), allows an exemption of the "debtor's aggregate interest, ... in real estate ... that the debtor ... uses as residence...," whereas the Rhode Island exemption statute applies to "one or all who ... occupy *or intend to occupy* the home as a principal residence." R.I. Gen. Laws §9-26-4.1 (emphasis added). The *intent to occupy*, a significant part of the Rhode Island statute, is not mentioned in the federal statute. Further, in *DeMasi* the focus was on whether the debtor's remainder interest qualified as exempt under Section 522(d)(1). In short, the facts and issues here are so different that *DeMasi* has no application.

We are not aware of any case construing the issue of statutory *intent to occupy* in Rhode Island, but Massachusetts has a similar homestead exemption provision which has been interpreted in *In re Roberts*, 280 B.R. 540, (Bankr. D. Mass. 2001), by Judge Hillman who stated: "in order to establish the requisite intent, a debtor must

5

BK No. 04-12764

demonstrate that the future occupancy is in the near future and is capable of measurement given whatever steps a debtor must take to achieve occupancy. A declaration of interest alone is insufficient." *Id.* at 546. I believe this is a useful and workable standard, and borrow it for guidance in this decision.

Here, the evidence of intent consists solely of the Debtor's unsupported announcement that he plans to move in after Aunt Bertha dies. He makes this declaration notwithstanding: (1) that he has not lived in Norwalk, or in Connecticut for that matter, since 1988; (2) if the Debtor does move into the property, his commuting time to work will increase by at least two hours each day, (3) he will have to provide and pay the expense of commuting to and from work; (4) the Debtor's salary is essentially fixed, with only modest increases in sight; (5) he does not know the cost of maintaining or whether he can afford to occupy the property; and (6) there is no competent or persuasive evidence that the co-owner consents to the Debtor's (free?) occupancy, or that the co-owner will not force the partition and sale of the property. Contrary to supporting the Debtor's bare declaration of intent, the evidence here is more suggestive of an absence of intent to occupy, as well as the Debtor's financial ability to achieve occupancy. See footnote 3 *supra*.

BK No. 04-12764

While I do not believe that intent was a pivotal issue in *DeMasi,* to the extent that it was considered, there clearly was evidence beyond this debtor's stand-alone declaration, i.e., DeMasi's attempt, albeit unsuccessful, to move into the property while his aunt was still alive and occupying the property, as well as the agreement by the co-owner that he would not force a sale of the property.[4] *DeMasi*, 227 B.R. at 588. Such evidence goes a long way in assisting the Court to make a judicial stab at what someone was thinking. Here, the Debtor's bare assertion that he plans to move into the property, coupled with the fact that he has the burden of establishing such intent, and implicitly the financial wherewithal to do so, requires a finding based on the evidence, the totality of circumstances, and the applicable law, that the Debtor has not met said burden. Therefore, the Trustee's objection to the Debtor's claimed exemption should be and is SUSTAINED.

Enter judgment consistent with this decision.

Dated at Providence, Rhode Island, this 15th day of August, 2005.

Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 8/15/2005

---

[4] While this is a vague (and probably unenforceable) promise, it does give credence and support to *DeMasi* on the issue of intent, elements which are missing here.

7